UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

---

IN RE:
KELLEY J. SPODRIS,                                      Chapter 7
            DEBTOR.                                     Case No. 11-15925-WCH

---

WARREN E. AGIN,
CHAPTER 7 TRUSTEE
            PLAINTIFF,
                                                        Adversary Proceeding
v.                                                      No. 11-1305

PNC MORTGAGE, a Division of
PNC BANK, N.A.,
            DEFENDANT.

---

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

　　The matter before the Court is the request of Warren E. Agin, the plaintiff and Chapter 7 Trustee, (the "Trustee") for entry of a money judgment against the defendant, PNC Mortgage ("PNC"), and PNC's opposition thereto. The Trustee filed the present adversary proceeding seeking to avoid the debtor's grant of a mortgage to PNC as a preferential transfer. A default previously entered against PNC, and the Trustee now seeks a monetary judgment for the value of the property interest preferentially transferred. For the reasons set forth below, I will deny the Trustee's request.

**II. BACKGROUND**

　　The facts are not in dispute. Kelley J. Spodris (the "Debtor") purchased real property located in Marston Mills, Massachusetts (the "Property") on September 24, 2002. On June 5,

1

2007, the Debtor transferred the Property to herself and her mother, Donna M. Kelley, ("Kelley") as joint tenants with rights of survivorship. On September 6, 2007, the Debtor and Kelley granted a mortgage on the Property to National City Mortgage. On February 13, 2011, they refinanced the 2007 mortgage with PNC. As part of that transaction, the Debtor and Kelley executed a note in the principal amount of $282,000.00 (the "Note") and granted PNC a mortgage on the Property to secure the obligation (the "Mortgage"). PNC, however, did not record the Mortgage in the Barnstable County Registry of Deeds until April 5, 2011. Pursuant to the Note and Mortgage, both the Debtor and Kelley were jointly and severally liable for the underlying debt.

On June 21, 2011, the Debtor filed a voluntary Chapter 7 petition. On October 17, 2011 the Court entered an order of discharge, discharging the Debtor's personal liability on the Note. Nevertheless, throughout the bankruptcy proceedings and up to the present date the Debtor and Kelley have remained current with their obligation to PNC.

On October 20, 2011, the Trustee commenced the present adversary proceeding against PNC, seeking to avoid the Mortgage as a preferential transfer pursuant to 11 U.S.C. §§ 547 and recover either the Mortgage or the value of the Mortgage for the benefit of the estate pursuant to 550.[1]  PNC failed to respond to the complaint, and on November 29, 2011, the Trustee filed an application for entry of default and a motion for a default judgment. The Trustee requested a money judgment against PNC in the amount of $243,000.00, the value of the Property the Debtor had listed on her bankruptcy schedules. PNC did not respond to either motion. On December 14, 2011, I granted the Trustee's application for entry of default. Fourteen days later, on

---

[1] Unless expressly stated otherwise, all references to the "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et seq*.

2

December 28, 2011, I granted the Trustee's motion for a default judgment by endorsement order which stated: "Granted. The Court enters a default judgment in favor of the Plaintiff against the Defendant." A separate judgment, however, did not enter.

When the Trustee attempted to enforce the default judgment against PNC in the United States District Court for the Southern District of Ohio, PNC successfully challenged his attempt the basis that there was no money judgment to enforce. On April 26, 2013, the Trustee filed a motion for judgment in a separate document, seeking entry of a judgment which expressly awarded him monetary recovery in the amount of $234,000.00, with interest accruing from December 28, 2012. PNC filed an opposition on May 10, 2013. After a hearing June 10, 2013, I granted the Trustee's motion over PNC's objection. The Trustee subsequently sought to amend the judgment to correct a typographical error such that the reference to December 28, 2012 should have been December 28, 2011. I held another hearing on August 14, 2013, before entering the amended judgment (the "Monetary Judgment").

PNC timely appealed the entry of the Monetary Judgment to the United States District Court for the District of Massachusetts (the "District Court"). In an opinion dated March 31, 2014, the District Court found that I erroneously entered a money judgment under Fed. R. Civ. P. 55(b) without compelling the Trustee to prove his damages, as the claim was not for a "sum certain."[2] The District Court vacated the Monetary Judgment and remanded the matter for consideration of the "proper remedy."[3] It further directed that if I conclude that an award of the

---

[2] *PNC Mortgage v. Agin*, 508 B.R. 252, 257 (D. Mass. 2014).

[3] *Id.*

3

value of the property is appropriate in this case, I must conduct an evidentiary hearing to determine that value. The District Court, however, was clearly dubious of such a result.[4]

On remand, I conducted a status conference on May 2, 2014, at which the Trustee renewed his request for entry of a money judgment, which PNC opposed. I took the matter under advisement, and the parties subsequently filed briefs in support of their positions.

### III. POSITIONS OF THE PARTIES

A. The Trustee

The Trustee argues that a money judgment is necessary to make the estate whole, as there is no way for him to realize the full value of the avoided mortgage interest (the "Avoided Interest"). The Trustee points out that he can only avoid and preserve the Mortgage for the benefit of the estate as to the Debtor's interest in the Property. Because the Property will remain subject to the Mortgage to the extent of Kelley's interest in the Property, the Trustee asserts that any attempt to sell the Avoided Interest will not obtain its true value. Moreover, the Trustee contends that the expenses and difficulty involved in such a sale are such that preservation of the Avoided Interest would not restore the Debtor's bankruptcy estate to the position it would have been in had the transfer not taken place. The Trustee also asserts that a money judgment is appropriate because the value of the Debtor's interest in the Mortgage is readily ascertainable—through either a valuation hearing or by reference to the amount of debt remaining on PNC's fully-secured claim.

The Trustee argues that a money judgment would not unfairly penalize PNC or result in a windfall to the estate, because the money judgment would replace avoidance of the Mortgage as the remedy. Thus, if monetary relief is granted, PNC would then hold the Mortgage as to both

---

[4] *Id.* ("I note, however, that given that PNC had lent debtor the sum of $282,000, it is unclear why it should pay an additional amount simply because the loan transaction occurred during the preference period.").

4

the Debtor's and Kelley's interest in the property. The Trustee contends that PNC would additionally share with the Debtor's other creditors in a distribution of whatever amount is recovered.

In fact, the Trustee asserts that it is PNC that has received a windfall, because PNC has continued to receive mortgage payments from the Debtor, notwithstanding the Trustee's avoidance of the Mortgage as to the Debtor. The Trustee asserts that the estate is entitled to such payments and contends that any determination of damages should include the payments made to PNC on account of the Avoided Interest.

Finally, the Trustee asserts that the "dilatory" manner in which PNC addressed the present litigation should weigh in favor of granting the Trustee a money recovery, and that the administrative expenses which the Trustee has incurred throughout these proceedings ought to be taken into account in the assessment of damages.

B. PNC

PNC asserts that a money judgment is not necessary in this case, as avoidance of the Mortgage as to the Debtor restores the parties to the position they were in prior to the preferential transfer. PNC points out that the property interest that the Debtor preferentially transferred was the right to look to the Property for satisfaction if the Debtor defaulted on its loan. PNC argues that avoidance deprives it of this right, renders PNC's loan unsecured as to the Debtor, and further allows the Trustee to recover on behalf of the estate the interest the Debtor had in the Property pre-transfer. PNC contends that requiring it to pay money damages would unfairly penalize it for having lent the Debtor money shortly prior to her bankruptcy filing.

Moreover, PNC argues that the Trustee is not entitled to money damages simply because avoidance of the Mortgage as to the Debtor will not eliminate the Mortgage as to Kelley's

5

interest in the Property. PNC contends that if it had never recorded the mortgage against the Debtor, or the Debtor had never granted it the Mortgage, there would have been no preference; yet the Trustee would still face the difficulty of administering an asset encumbered by a valid mortgage on Kelley's interest in it. Thus, PNC asserts that avoidance of the mortgage as to the Debtor's interest in the Property constitutes a complete recovery for the bankruptcy estate.

Additionally, PNC asserts that the Trustee is not entitled to a money judgment simply because he is dissatisfied with the potential market for the Avoided Interest. PNC further argues that even if money damages were appropriate, the correct measure would be the market value of the avoided interest, not the value of the real property or the remaining mortgage debt. Moreover, PNC contends that any payments it has received from the Debtor are not proceeds of the Avoided Interest, because Kelley is jointly and severally liable for the full amount of the debt.

Finally, PNC asserts that it has not engaged in any dilatory conduct in these proceedings. PNC contends that it had no reason to oppose the entry of a non-monetary default judgment against it because it does not dispute the avoidability of the Mortgage as to the Debtor. PNC points out that it promptly responded when the Trustee attempted to collect on the judgment in the Ohio proceedings and timely appeared in the present proceeding to object to the entry of a money judgment.

## IV. <u>DISCUSSION</u>

Pursuant to § 547(b), the Trustee may avoid as a preference "any transfer of an interest of the debtor in property" made: (1) to a creditor; (2) on account of an antecedent debt; (3) while the debtor was insolvent; (4) on or within 90 days of the petition date; and (5) that enables the creditor to receive more than the creditor would have in a Chapter 7 case if the transfer had not

been made.[5] The parties agree that because the Mortgage was recorded within 90 days of the petition date, the Debtor's grant of the Mortgage to PNC constituted a preference.[6] As the United States Court of Appeals for the First Circuit held in *In re Lazarus*, a debtor's grant of a mortgage as to his or her interest in jointly-owned property may constitute a preferential transfer.[7] Nevertheless, the First Circuit left open the questions of what the appropriate remedy was in such cases and what effect the non-debtor co-mortgagor's interest would have on the avoidance of the transfer.[8] The parties disagree as to these precise issues.

As is relevant here, two Bankruptcy Code sections provide remedies in the case of a preferential transfer. First, pursuant to § 551, "[a]ny transfer avoided under [§ 547] of this title . . . is preserved for the benefit of the estate."[9] In the case of an avoided lien, this means that the lien itself is automatically preserved for the benefit of the estate, and the trustee steps into the shoes of the lienholder.[10] Second, pursuant to § 550(a), "to the extent a transfer is avoided under [§ 547], the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property."[11] Unlike preservation, recovery under § 550 is not automatic, and the trustee must take action to recover the property or its value.[12] Moreover, the

---

[5] 11 U.S.C. § 547(b).

[6] Because the Mortgage was recorded more than 30 days after the loan was made, the transfer is deemed to occur at the time of recording, and could not qualify for the contemporaneous exchange defense. *See* §§ 547(c)(1) and 547(e)(2)(B); *Collins v. Greater Atl. Mortg. Corp. (In re Lazarus)*, 478 F.3d 12, 15 (1st Cir. 2007).

[7] *See In re Lazarus*, 478 F.3d at 15.

[8] *See id.* at 19 n.9.

[9] 11 U.S.C. § 551.

[10] *DeGiacomo v. Traverse (In re Traverse)*, 753 F.3d 19, 26 (1st Cir. 2014).

[11] 11 U.S.C. § 550(a).

[12] *Rodriguez v. Daimlerchrysler Fin. Servs. Americas LLC (In re Bremer)*, 408 B.R. 355, 359 (B.A.P. 10th Cir. 2009), *aff'd Rodriguez v. Drive Fin. Servs. (In re Trout)*, 609 F.3d 1106 (10th Cir. 2010).

language of § 550 is permissive, giving the court the discretion over whether to award any recovery under that section and, if recovery is indeed appropriate, whether recovery of the property itself or a monetary recovery is the appropriate remedy.[13]

The purpose of § 550 is to "to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred."[14] Thus, recovery under that section is only necessary if preservation of the transfer is insufficient to return the estate to its pre-transfer position.[15] If the court determines that recovery under § 550 is appropriate, the factors the court considers in deciding whether to award the trustee recovery of the property or its value include: (1) "the presence of conflicting evidence with respect to the value of the transferred property;" (2) "whether the property has been converted and is thus no longer recoverable;" (3) "whether the property has depreciated in value subsequent to the transfer;" and (4) "whether the value is readily determinable and awarding the value would realize a savings for the estate."[16]

In the case of a non-possessory security interest or lien, avoidance and preservation of the lien is generally sufficient to return the bankruptcy estate to its pre-transfer condition.[17] Because preservation in essence returns the property transferred—the lien—to the estate, there is no longer any property to recover, rendering resort to § 550 unnecessary.[18] Nevertheless, in some

---

[13] *Id.*

[14] *Aero-Fastener, Inc. v. Sierracin Corp. (In re Aero-Fastener, Inc.)*, 177 B.R. 120, 139 (Bankr. D. Mass. 1994).

[15] *In re Bremer*, 408 B.R. at 359-360.

[16] *McCarthy v. Fin. Freedom Senior Funding Corp. (In re Early)*, 05-01354, 2008 WL 2073917 at *6 (Bankr. D.D.C. May 12, 2008) (citing *Gennrich v. Mont. Sport U.S.A. (In re Int'l Ski Serv., Inc.),* 119 B.R. 654 (Bankr. W.D. Wis. 1990)), order amended and supplemented, 05-01354, 2008 WL 2569408 (Bankr. D.D.C. June 23, 2008); *see also In re Aero-Fastener, Inc.*, 177 B.R. at 139.

[17] *In re Bremer*, 408 B.R. at 359-360 (citing 4 *Norton Bankr.L. & Prac.3d* § 70.3); *Schnittjer v. Linn Area Credit Union (In re Sickels)*, 392 B.R. 423, 426 (Bankr. N.D. Iowa 2008).

[18] *In re Bremer*, 408 B.R. at 359-360; *In re Sickels*, 392 B.R. at 426-27; *Suhar v. Burns (In re Burns)*, 322 F.3d 421, 428 (6th Cir. 2003).

cases, preservation of a lien for the benefit of the estate is insufficient to make the estate whole. As the United States Court of Appeals for the Eighth Circuit explained in *In re Willaert*, "when preferentially transferred property cannot be recovered, the court must order its value returned to the bankruptcy estate."[19]  For example, in *In re Schwartz*, the debtor granted two mortgages to lenders during the preference period.[20]  The debtor later refinanced the mortgages, resulting in the lenders being paid in full, while the property remained encumbered by the new mortgages.[21]  In that case, the court found that since the lenders no longer held the avoided mortgages, they could not be returned to the estate, and a money judgment for their value was appropriate.[22]  Similarly, in *In re Blackburn*, the court awarded the trustee the value of an avoided lien when the collateral securing the lien had been transferred to a third party.[23]

    In this case, preservation of the Avoided Interest for the benefit of the estate is sufficient to return the "property transferred" to the estate.  Neither the Mortgage not the Property were transferred to third parties, and thus this case is unlike other cases in which courts have found a monetary recovery necessary.  Nevertheless, the Trustee asserts that there are special circumstances warranting a monetary recovery in this case and requests that I award him the value of the property transferred instead of preserving the Avoided Interest for the benefit of the estate.[24]

---

[19] *Halverson v. Le Sueur State Bank (In re Willaert)*, 944 F.2d 463, 464 (8th Cir. 1991).

[20] *Seaver v. Mortg. Elec. Registration Sys., Inc. (In re Schwartz)*, 383 B.R. 119, 122 (B.A.P. 8th Cir. 2008).

[21] *Id.*

[22] *Id.* at 126.

[23] *See Tidwell v. Chrysler Credit Corp. (In re Blackburn)*, 90 B.R. 569 (Bankr. M.D. Ga. 1987).

[24] *See In re Early*, 2008 WL 2073917 at *3 (noting that the remedies under §§ 551 and 550 are "mutually exclusive").

The Trustee relies on the recent decision by the First Circuit, *In re Traverse*, in which the court described the effect of preservation as follows:

> [P]reservation of a lien entitles a bankruptcy estate to the full value of the preserved lien—no more and no less. Where this lien is an undefaulted mortgage on otherwise exempted property, the trustee may for the benefit of the estate enjoy the liquid market value of that mortgage, claim the first proceeds from a voluntary sale, or wait to exercise the rights of a mortgagee in the event of a default.[25]

Here, as in *Traverse*, the Debtor has not defaulted on the Mortgage. Thus, the Trustee is not entitled to sell the Property itself to realize the value of the Avoided Interest. Moreover, the Trustee asserts that none of the options discussed in *Traverse* will realize the "full value" of the mortgage, rendering preservation an insufficient remedy. He contends that a voluntary sale is not in prospect and the maturation date of the mortgage is in 2041, making it unfeasible to keep the case open for a potential default. Primarily, however, the Trustee argues that the "liquid market value" of the avoided interest is not equal to its "full value," given the difficulty of selling a partial interest in a mortgage.

The Trustee relies on a decision by the bankruptcy court in *In re Early* as support for this view.[26] In that case, the debtor owned property with his non-debtor wife as tenants by the entirety.[27] The debtor and his wife both executed a reverse mortgage in favor of a lender.[28] After the debtor filed bankruptcy, the trustee avoided the mortgage as a preference with respect to the debtor's interest in the property and requested a monetary recovery for the value of the lien.[29] Recognizing the issue as one of first impression, the court noted that money damages

---

[25] *In re Traverse*, 753 F.3d at 31.

[26] *See In re Early*, 2008 WL 2073917.

[27] *Id.* at *1.

[28] *Id.*

[29] *Id.*

under § 550(a) "may be appropriate" in such a situation, given the difficulty of selling a one-half interest in the mortgage.[30] Ultimately, however, the mortgagee agreed to allow the Trustee to sell the entire mortgage, and the court withdrew its opinion "without deciding whether those observations were correct or in error."[31]

Unlike the court in *Early*, I do not find the difficulty of administering the Avoided Interest a special circumstance entitling the Trustee to a monetary recovery. First, I note that if the Debtor had never granted PNC a mortgage in the property, and only Kelley had mortgaged her interest in the property, there would have been no preference. Nevertheless, the Trustee would be faced with a similar difficulty of disposing of property in which a non-debtor holds an interest. Second, the court in *Early* emphasized that in attempting to sell one half of a lien, the Trustee would "not be able to realize one half of the value of the entire lien."[32] The court found that one half of the value of the entire lien was the appropriate measure of damages in part because the property was held by the debtor and his wife as tenants by the entirety, and thus both parties' consent was necessary to create a lien on the property.[33] In this case, however, the Debtor and Kelley hold the Property as joint tenants. Under Massachusetts law, a joint tenant may convey his or her interest in property without the consent of the co-owner.[34] Thus, this case is distinguishable from *Early*.

---

[30] *Id.* at *7.

[31] *See In re Early*, 2008 WL 2569408 at *3.

[32] *See In re Early*, 2008 WL 2073917 at *7.

[33] *Id.* at *10.

[34] *See Attorney Gen. v. Clark*, 222 Mass. 291, 293 (1915); *see also Coraccio v. Lowell Five Cents Sav. Bank*, 415 Mass. 145, 152 (1993) (finding that under Massachusetts law even tenants by the entirety may encumber or convey their interests in property without consent of the other tenant).

Furthermore, the approach taken by the court in *Early* mischaracterizes the nature of the property interest at issue. The proper measure of value in this case is the market value of the Avoided Interest itself, not the value of half of the entire Mortgage.[35] The Trustee is not entitled to monetary damages simply because the Avoided Interest is a partial interest that may not be worth very much. In fact, the difficulty of valuing such an interest militates *against* awarding the Trustee the value of the property under § 550.[36]

Accordingly, I find that preservation of the Avoided Interest for the benefit of the estate is sufficient to put the estate in its pre-transfer position, and thus constitutes a complete recovery in this case. As PNC points out, the "interest of the debtor in property" that was preferentially transferred was PNC's right to enforce its claim against the property in the event of default.[37] Avoidance of the Mortgage as to the Debtor's interest in the property deprives PNC of this right, putting PNC in the same position as the Debtor's other creditors. Preservation of the Avoided Interest for the benefit of the estate grants the Trustee whatever rights PNC would have had against the Debtor's interest in the Property on account of the Mortgage. Just as PNC would have no immediate recourse against the Property absent a default, neither does the Trustee.[38] Thus, the Trustee is limited to enjoying the "liquid market value" of the Avoided Interest.[39] Any

---

[35] *See In re Traverse*, 753 F.3d at 31. I note that the court in *Early* did not dispute that market value was the appropriate measure of damages, but looked to the value of the entire lien, rather than the avoided portion of it. *In re Early*, 2008 WL 2073917 at *10.

[36] *See In re Aero-Fastener, Inc.*, 177 B.R. at 139. Because Kelley is jointly and severally liable for the entire debt, and her interest in the Property remains encumbered, valuing the Avoided Interest is not simply a matter of looking to the remaining amount of debt or the value of the collateral on the petition date, which the Trustee proposes as the method of valuation.

[37] 11 U.S.C. § 547(b).

[38] *In re Traverse*, 753 F.3d at 31 ("[I]n some cases a mortgagee will have no immediate means for claiming the value of its collateral.").

[39] *In re Traverse*, 753 F.3d at 31.

difficulty the Trustee may encounter in administering the Avoided Interest stems from the fact that it is a partial interest. I do not find this a special circumstance entitling the Trustee to a monetary recovery, when preservation of the Avoided Interest in all other respects puts the parties in their pre-transfer positions.[40]

Finally, I address the Trustee's contention that he is entitled to the post-petition payments that have been made on account of the promissory note, as they are proceeds of the Avoided Interest. I first note that the case on which the Trustee relies holds a minority view,[41] and one that the First Circuit has rejected, albeit in *dicta*.[42] The majority of cases hold that when a trustee avoids a lien, he or she steps into the shoes of the lienholder only as to the lienholder's *in rem* rights, and does not gain the right under the contract to receive payments.[43] In any event, the payments received by PNC in this case are not properly considered proceeds of the Avoided Interest. Kelley remains liable for the entire debt, which is secured by her interest in the Property. Thus, even if I were to take the minority view, this case is distinguishable because PNC is entitled to the payments independently of the Debtor's former obligations under the promissory note and Mortgage.

---

[40] Moreover, in this case, the Debtor and Kelley executed the Mortgage as a part of a refinancing of the Property. Due to the delay in recording, the grant of the Mortgage constituted a preference; however, there was likely no prejudice to the Debtor's other creditors from the transaction. *See In re Lazarus*, 478 F.3d at 17-18 (noting that although the § 547(b) test for preferences must be mechanically applied, there was likely no prejudice to other creditors when the debtor granted the lender a mortgage in a refinancing transaction.) The lack of prejudice weighs further against requiring PNC to pay money damages in this case.

[41] *See White v. Wachovia Dealer Servs., Inc. (In re Wyatt)*, 440 B.R. 204 (Bankr. D.D.C. 2010).

[42] *See In re Traverse*, 753 F.3d at 31 n.9.

[43] *See Morris v. St. John Nat'l Bank (In re Haberman)*, 516 F.3d 1207, 1211-12 (10th Cir. 2008); *Morris v. Vulcan Chem. Credit Union (In re Rubia),* 257 B.R. 324, 327 (B.A.P. 10th Cir. 2001), *aff'd,* 23 Fed.Appx. 968 (10th Cir. 2001); *Morris v. Citifinancial (In re Trible),* 290 B.R. 838, 845 (Bankr. D. Kan. 2003).

## V. <u>CONCLUSION</u>

In light of the foregoing, I will enter an order denying the Trustee's request for entry of a money judgment.

                                                        _____
                                                        William C. Hillman
                                                        United States Bankruptcy Judge

Dated: September 4, 2014

Counsel Appearing:

      Jeffrey J. Cymrot and Anthony McGuinness, Sassoon and Cymrot, Boston, MA
      Timothy J. Durken and Michael J. Fencer, Jager Smith, PC, Boston, MA
          for the Trustee
      Thomas K. McCraw, Jr., LeClairRyan, PC, Boston, MA
          for PNC